1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10
11

| UNITED STATES OF AMERICA, | Case No. 11cr01750 BTM |
|---|---|

12

Plaintiff,

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT**

v.

13

OMAR DOMINGUEZ-VALENCIA,

14

Defendant.

15
16          Defendant Omar Dominguez-Valencia is charged with attempted reentry into the

17  United States in violation of 8 U.S.C. § 1326.  Defendant has filed a motion to dismiss the

18  indictment (Doc. 43),[1] claiming that his underlying deportation and removal violated his Fifth

19  Amendment due process rights.  For the reasons set forth herein, Defendant's motion to

20  dismiss the indictment is DENIED.

21
22                                      **I.  BACKGROUND**

23
24          Defendant legally entered the United States as an immigrant in 1971 at the age of 8.

25  In 1989, he married Sandra Teresa Martinez, a United States citizen.  Defendant and Ms.

26
27
28          [1]At a May 21, 2012 hearing on this motion, Defendant withdrew all previously-filed
motions to dismiss the indictment (Docs. 16 and 37).

Martinez have two United States citizen children:  Adrian Jacob Dominguez (born 1984), and Alexis Summer Dominguez (born 1993).

In October 1988, Defendant was convicted of second degree robbery in violation of California Penal Code § 211, for which he received a sentence of three years.  On March 10, 1994, Defendant pleaded no contest to a violation of California Penal Code § 459 (first-degree burglary), and was sentenced to a term of two years, plus five consecutive years for a prior robbery enhancement under California Penal Code § 667.

On February 2, 1998, Defendant was served a Notice to Appear ("NTA") (amended February 11, 1998) charging that he was removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) as an alien convicted of an "aggravated felony" after admission.[2]  Specifically, the NTA alleged that on March 10, 1994, Defendant was "convicted in the Superior Court of California, County of Los Angeles, for the offense of Burglary, in violation of Section 459 of the California Penal Code."  (Doc. 43-2 (McMullen Decl.), Ex. B.)

At Defendant's deportation hearing, held on February 24, 1998, Defendant admitted to the immigration judge ("IJ") that "[o]n March 10, 1994, in Los Angeles, [he was] convicted of burglary[,]" for which he was "sentenced to seven years[.]"  (Id., Ex. D ("Transcript") at 3.)  On the basis of these admissions, the IJ sustained the charge in the NTA.  (Id.)

The IJ explained to Defendant that, since he had entered the United States legally, he could apply directly to the immigration court for an adjustment of status rather than being deported.  (Id. at 4.)  The IJ explained that such application would be granted only if the IJ waived his convictions and found his U.S. citizen family would suffer "extreme hardship" if he was deported.  (Id.) The IJ warned that the process could "take some time."  (Id. at 6.)

The IJ also explained that, in the alternative, the IJ could order Defendant immediately deported, and Defendant could subsequently apply to the "immigration service" or the "American Embassy" in Mexico for an adjustment of status, but if Defendant chose that option then there would be "one more ground you'd have to get a waiver for and that's the

---

[2]The February 11, 1998 amended NTA clarified that Defendant was an alien admitted as a non-immigrant.

1   deportation that you didn't have before." (Id. at 6.)

2        Defendant stated that he was experiencing medical problems for which he was

3   receiving inadequate treatment in custody, and that as a result of his medical needs, he

4   would choose immediate deportation.  The IJ then asked Defendant if he wished to appeal

5   the decision, or if he would accept it, "one or the other."  Defendant chose to "accept." (Id.)

6        The IJ then ordered Defendant removed from the United States, and on that same

7   day, February 24, 1998, Defendant was physically removed to Mexico.  The removal order

8   was reinstated in 2000, 2010, and 2011.  (Defendant Br. at 8.)  On March 1, 2011, a Border

9   Patrol Agent sighted Defendant walking north from the international border fence

10  approximately three miles west of the San Ysidro, CA Port of Entry and apprehended him.

11

12                            **II.  DISCUSSION**

13

14       Due process requires that a defendant charged with a violation of Section 1326 must

15  have the right to raise a collateral attack against the underlying removal order prior to trial.

16  United States v. Pallares–Galan, 359 F.3d 1088, 1095 (9th Cir. 2004).  In order to sustain

17  a collateral attack under § 1326(d), the defendant must demonstrate: (1) that he "exhausted

18  any administrative remedies that may have been available to seek relief against the order;"

19  (2) that "the deportation proceedings at which the order was issued improperly deprived [him]

20  of the opportunity for judicial review;" and (3) that "the entry of the order was fundamentally

21  unfair."  8 U.S.C. § 1326(d).  "[A] predicate removal order satisfies the condition of being

22  fundamentally unfair for purposes of § 1326(d)(3) when the deportation proceeding violated

23  the alien's due process rights and the alien suffered prejudice as a result."  United States v.

24  Arias-Ordonez, 597 F.3d 972, 976 (9th Cir. 2010).

25       Defendant alleges due process violations both in the IJ's determination that he was

26  subject to removal and in the IJ's alleged failure to advise Defendant of an available form of

27  relief.  The Court addresses each argument in turn.

28  //

11cr01750 BTM

1          a.      Defendant's claim that determination of removability violated due process

2

3          Defendant first argues that by "advis[ing Defendant] that proof of a violation of

4    California Penal Code § 459 resulting in a sentence of more than one year establishes an

5    aggravated felony[,]" the IJ violated Defendant's due process rights, since a violation of

6    California Penal Code § 459 is not a categorical aggravated felony, and the immigration

7    service did not offer any documentary evidence proving that Defendant's § 459 conviction

8    was an aggravated felony under the modified categorical approach.  (Defendant Br. at 11.)

9          As a threshold issue, the Court addresses whether Defendant's waiver of his right to

10   appeal the removal proceedings (Transcript at 6) and failure to exhaust this issue foreclose

11   the present challenge.  Where a waiver of the right to appeal a removal order is not

12   "considered and intelligent," the waiver and resulting failure to exhaust are excused.  United

13   States v. Pallares-Galan, 359 F.3d 1088, 1096 (9th Cir. 2004).  Defendant cites Pallares-

14   Galan for the broad proposition that "[a] waiver of the right to appeal is not 'considered and

15   intelligent' if it is based on the immigration judge's erroneous advice to an unrepresented

16   alien."  (Defendant Br. at 9.)  But Pallares-Galan's holding is much narrower:

17         Where the record contains an inference that the petitioner is eligible for relief
           from deportation, but the IJ fails to advise the alien of this possibility and give
18         him the opportunity to develop the issue, we do not consider an alien's waiver
           of his right to appeal his deportation order to be "considered and intelligent."
19

20   359 F.3d at 1096 ((citation and quotation marks omitted)).  Notwithstanding Defendant's

21   artful characterization of the IJ's conclusion that "removability had been established" as

22   "erroneous advice" (Defendant Br. at 18-19), the IJ's alleged failure to put the government

23   to its proofs is not the same as a failure to advise Defendant regarding eligibility for relief for

24   which the record suggests he is eligible.  To hold otherwise would enable any § 1326

25   defendant challenging the IJ's determination of removability to overcome the exhaustion

26   requirement.  Since Defendant has not exhausted this argument, he cannot raise it in the

27   present collateral attack.  See 18 U.S.C. § 1326(d)(1).

28   //

                                                 4

1    Defendant's argument fails on the merits as well.  The parties agree, as does the

2  Court, that a first-degree ("residential"[3]) burglary conviction under California Penal Code §

3  459 for which the term of imprisonment is at least one year is an "aggravated felony" within

4  the meaning of the immigration statutes, and that an alien so convicted is subject to removal.

5  In Lopez-Cardona v. Holder, 662 F.3d 1110 (9th Cir. 2011), the Ninth Circuit reasoned that

6  "a conviction for residential burglary under California Penal Code § 459 constitutes a crime

7  of violence because it is a felony 'that, by its nature, involves a substantial risk that physical

8  force against the person or property of another may be used in the course of committing the

9  offense.'" 662 F.3d at 1112 (citing 18 U.S.C. § 16(b)); see also United States v. Becker, 919

10  F.3d 568, 571 (9th Cir. 1990) (same); 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is

11  convicted of an aggravated felony at any time after admission is deportable."); 8 U.S.C. §

12  1101(a)(43)(F) (including within the definition of "aggravated felony" any "a crime of violence

13  (as defined in section 16 of Title 18, but not including a purely political offense) for which the

14  term of imprisonment is at least one year[.]").

15    Defendant admitted to the IJ that he received a term of imprisonment of seven years

16  for his burglary conviction.  (Doc. 43-2, Ex. D. at 3.)  Thus, the government can establish that

17  the IJ reached the correct result if it can show that Defendant's § 459 conviction charged in

18  the NTA was a first-degree burglary conviction.  See Taylor v. United States, 495 U.S. 575,

19  600-02 (1990).  The evidence the government is permitted to use for this purpose is limited

20  to the record of conviction, which includes "the statutory definition, charging document,

21  written plea agreement, transcript of plea colloquy, and any explicit factual finding by the

22  [state] trial judge to which [the defendant] assented." United States v. Vidal, 504 F.3d 1072,

23  1086 (9th Cir. 2007) (en banc) (citation and quotation marks omitted).

24  _____

25    [3]Section 459 defines burglary as the entry of any building, locked vehicle, aircraft, or
mine "with intent to commit grand or petit larceny or any felony" once inside.  Cal. Penal
26  Code § 459.  Section 460(a) specifies that burglary of the first degree is burglary of a
residential space.  See Cal. Penal Code § 460(a) ("Every burglary of an inhabited dwelling
27  house, vessel, as defined in the Harbors and Navigation Code, which is inhabited and
designed for habitation, floating home, as defined in subdivision (d) of Section 18075.55 of
28  the Health and Safety Code, or trailer coach, as defined by the Vehicle Code, or the
inhabited portion of any other building, is burglary of the first degree.").

11cr01750 BTM

1    The Ninth Circuit "permit[s] reliance on an abstract of judgment in combination with

2    a charging document to establish that the defendant pled guilty to a generic crime under the

3    modified categorical approach." Ramirez-Villalpando v. Holder, 645 F.3d 1035, 1040 (9th

4    Cir. 2011).  The government has introduced into evidence before this Court a copy of the

5    relevant charging document (the "Information"), and a copy of the abstract of judgment for

6    Defendant's burglary conviction.  The Information charged Defendant in Count 1 with "the

7    crime of FIRST DEGREE RESIDENTIAL BURGLARY" (Doc. 44-3 (Ex. 3 to Gov't Br.) at 6

8    of 52), and the abstract of judgment shows that Defendant pleaded guilty to Count 1,

9    "BURGLARY 1ST[,]" and received a term of imprisonment of two years, in addition to a five-

10   year enhancement (id. at 52 of 52).  Thus, the Court holds that the IJ was correct that

11   Defendant was subject to removal on the basis of his § 459 burglary conviction.

12   Defendant contends that, notwithstanding the documentary record before this Court,

13   the IJ's "finding of removability without an evidentiary basis [in the record before it] violated

14   [Defendant's] due process right to a full and fair hearing in which the government carries its

15   burden of proving removability." (Defendant Br. at 13.)  Defendant further argues that this

16   procedural failure prejudiced Defendant, because had the IJ put the government to its proofs,

17   it is possible that the government might have been unable to produce documents from the

18   record of conviction establishing that Defendant has been convicted of first-degree burglary.

19   (Id. at 15.)  This argument is not persuasive.

20   Defendant has not cited any authority for the proposition that an IJ commits a due

21   process violation where the grounds for a removal order are not supported by sufficient

22   evidence in the record.  But even assuming that the IJ violated Defendant's due process

23   rights by failing to require an evidentiary showing that the Defendant's § 459 conviction was

24   for first-degree burglary, Defendant must show "'plausible grounds' on which he could have

25   been granted relief from removal" in order to establish prejudice.  United States v. Reyes-

26   Bonilla, 671 F.3d 1036, 1049 (9th Cir. 2012) (finding no prejudice where alien attacked

27

28

6

11cr01750 BTM

1  removal order on grounds that he did not waive right to counsel).[4]  This he cannot do, since

2  Defendant *was actually removable* on the basis of the charged burglary conviction, as

3  explained above.  In reaching this determination, the Court need not limit its review to

4  documents that were before the IJ during the underlying removal proceedings.[5]

5

6         b.    Defendant's claim that IJ failed to advise him of available form of relief

7

8         Defendant's second argument is that the IJ failed to advise him of a plausible form of

9  relief.  The Due Process Clause of the Fifth Amendment requires that an alien in immigration

10  proceedings be "made aware that he has a right to seek relief" so that he has a meaningful

11  opportunity to appeal the denial of that right.  United States v. Arrieta, 224 F.3d 1076, 1079

12  (9th Cir. 2000).  "[T]he IJ must advise the alien of this possibility and give him the opportunity

13  to develop the issue."  Id. (internal quotations and citation omitted).  Essentially, Defendant

14  contends that the IJ advised him of two options for pursuing relief, but failed to advise him

15  of a third, superior option.

16         This subsection proceeds in three parts.  Part 1 explains the two options for relief that

17

18         [4]Defendant suggests that the Court should determine the existence of prejudice based
    on whether "the alleged violations actually had the potential for affecting the outcome of his
19  deportation proceedings," rather than whether Defendant has shown "plausible grounds for
    relief."  (Defendant Br. at 14 (citing Reyes-Bonilla, 671 F.3d at 1048).)  The Court finds that
20  Defendant's citation to Reyes-Bonilla is out of context, and that Reyes-Bonilla reaffirms in
    clear language that "plausible grounds for relief" is the appropriate standard for prejudice
21  where a § 1326 defendant raises a collateral challenge to his deportation order.  Reyes-
    Bonilla, 671 F.3d at 1049-50.

22         [5]See, e.g., United States v. Pargas-Gonzalez, No. 11cr03120, 2012 WL 424360, at
    *5 (S.D. Cal. Feb. 9, 2012) (Moskowitz, J.) (finding no prejudice, where IJ's determination of
23  ineligibility for cancellation of removal was based on incorrect conclusion that Cal. Penal
    Code § 12021(a) conviction was a categorical aggravated felony, but government had
24  submitted sufficient evidence in opposition to motion to dismiss to establish that defendant's
    conviction was an aggravated felony under modified categorical approach); United States
25  v. Garzia-Gomez, No. 10cr00080, 2010 WL 2776079, at *3 (D. Nev. Jul. 13, 2010) (holding
    that § 1326 defendant was not prejudiced in underlying removal proceedings by IJ's failure
26  to advise of possibility of voluntary departure, where record before district court showed that
    defendant "was not actually eligible for voluntary departure"); United States v.
27  Arciniega–Meda, No. CR 11-00145, 2011 WL 6091758, at *4 n.4 (D. Idaho Dec. 7, 2011)
    (denying motion to dismiss § 1326 indictment based on modified categorical approach after
28  considering supplemental documents from record of conviction introduced to court during
    pendency of motion).

were available to Defendant at the time of his deportation proceedings and that were disclosed to him by the IJ.  Part 2 explains the alleged third, undisclosed option for relief. Part 3 discusses whether due process required the IJ to disclose the alleged third option of relief to Defendant, and whether the failure to do so caused prejudice.

## 1.    Available options for relief disclosed by IJ ("first option" and "second option")

At the time of his deportation proceedings, Defendant could have sought relief under Section 212(h) of the Immigration and Naturalization Act ("INA").  See 8 U.S.C. § 1182(h). This section allows the Attorney General to waive certain grounds of inadmissibility to permit an alien to apply or reapply "for a visa, for admission to the United States, or adjustment of status," and applies

> in the case of an immigrant who is the spouse, parent, son, or daughter of a citizen of the United States or an alien lawfully admitted for permanent residence if it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien.

8 U.S.C. § 1182(h)(1)(B).  The Ninth Circuit has explained that a waiver of inadmissibility may be granted under § 212(h) where "(1) the alien is the spouse, parent, or child of a citizen or lawful permanent resident; (2) the exclusion would result in extreme hardship to the citizen or lawfully resident relative; (3) the alien's admission would not be contrary to the national welfare, safety, or security of the United States; and (4) the Attorney General exercises her discretion in the alien's favor." United States v. Arce-Hernandez, 163 F.3d 559, 563 (9th Cir. 1999).

In addition to the requirements in the preceding paragraph, an alien *in a deportation proceeding* cannot receive a § 212(h) waiver unless it is granted in conjunction with an adjustment of status.  In re Bernabella, 13 I. & N. Dec. 42, 43-44 (B.I.A. 1968).  Under INA § 245, the Attorney General may, in his discretion, adjust the status of an alien who was inspected and admitted into the United States (such as Defendant) to that of an alien lawfully

admitted for permanent residence if (1) the alien makes an application for such adjustment; (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence; and (3) an immigrant visa is immediately available to him at the time his application was filed. See 8 U.S.C. § 1255(a). As the husband of a United States citizen, an immigrant visa also would have been immediately available to Defendant upon his wife's petition. See 8 U.S.C. §§ 1151(b)(2)(A)(I), 1154(a)(1)(A)(ii).

Thus, the "first option" for Defendant at the time of his deportation proceedings was to request a continuance of the proceedings and have his wife file a petition for an immigrant visa (which would become available immediately). Then, Defendant could concurrently: **(a)** seek adjustment of status under INA § 245 *and* **(b)** seek a waiver of his criminal convictions pursuant to § 212(h). See United States v. Marco Contreras, No. 08cr03414, 2009 WL 703396, at *3-4 (S.D. Cal. Mar. 17, 2009) (explaining procedure).

Alternatively, as a "second option," Defendant could have declined to seek a continuance of the deportation proceedings, in which case he would have been deported immediately to Mexico. Once there, he could apply for an adjustment of status and a § 212(h) waiver, but he would face an additional obstacle: Under INA § 212(a)(9)(A), his deportation would constitute a separate ground for inadmissibility, until he had remained outside the United States for a period of 20 consecutive years. See 8 U.S.C. § 1182(a)(9)(A)(I); 8 C.F.R. § 212.2(a). Thus, under the "second option," Defendant would need to apply for and receive **(a)** permission to reapply for admission during the 20-year period, pursuant to 8 U.S.C. § 1182(a)(9)(A)(iii) and 8 C.F.R. § 212.2(a) ("I-212 waiver"). If successful,[6] he could then apply from Mexico for **(b)** an adjustment of status under INA § 245; and **(c)** a waiver of his criminal convictions pursuant to § 212(h).

_____

[6]In resolving an application for permission to reapply, "all pertinent circumstances relating to the applicant which are set forth in the record of proceedings are considered." See Matter of Tin, 14 I. & N. Dec. 371, 373-74 (B.I.A. 1973) (stating that "all pertinent circumstances" include "the basis for deportation, recency of deportation, length of residence in the United States, the moral character of the applicant, his respect for law and order, evidence of reformation and rehabilitations, his family responsibilities, any inadmissibility to the United States under other sections of law, hardship involved to himself and others, and the need for his services in the United States.").

9

11cr01750 BTM

At the deportation hearing, the IJ disclosed to Defendant the availability of the "first option" (continuing the deportation proceeding and seeking § 212(h) waiver and adjustment of status).  (Defendant Br. at 6 (citing Transcript at 4)).  The IJ also offered Defendant the opportunity to take "some time to talk to [his wife] about applying" for this form of relief. (Transcript at 4.)  Defendant declined this option, stating that "I have a lot of medical needs" and that "I honestly need to take care of them, because right now they are not being [inaudible] the doctor."  (Id.)

In response, the IJ stated:  "I am in no way going to stop you from making a decision, but I have to be sure, though, is [sic] that you understand fully the legal effects of your decision."  (Id.)  The IJ then asked if Defendant understood "that [choosing deportation, *i.e.*, the "second option"] could cause that you would never be allowed to adjust your status because you would have a deportation or a removal on your record," to which Defendant replied: "Um-hm."  (Id.)

Later in the hearing, Defendant asked:  "[I]f . . . my wife wants to file an adjustment of status it would have to be done through you?"  At that point, the IJ repeated the offer to allow Defendant to "take time to [pursue the "first option"] if you want to try[,]" and explained that if he did not pursue that option, the IJ would order him deported.  (Id. at 6.)  The IJ then explained the "second option," stating that once Defendant was deported, he could "try to do it though the immigration service or through the American Embassy where you're going to be in Mexico, but there's one more ground that you'd have to get a waiver for and that's the deportation that you didn't have before."  (Id.)

Ultimately, Defendant chose immediate deportation.

### 2.    Alleged "third option"

Defendant alleges that the IJ failed to advise him of a third avenue of relief, whereby he could immediately apply for advanced adjudication of permission to apply for reentry prior to his removal, and simultaneously apply for advance parole to return to Mexico while subsequently pursuing the more timely process of

10

1                 obtaining 212(h) waivers and adjustment of status before the immigration

2                 judge.

3 (Defendant Br. at 21.)  According to Defendant, an alien pursuing this option would file two

4 applications while remaining in custody in the United States: **(a)** an application for advance

5 consent to reapply; and **(b)** an application for advance parole.  Meanwhile, the alien would

6 essentially pursue the "first option" by applying to the immigration court for **(c)** adjustment of

7 status under INA § 245 *and* **(d)** a waiver of his criminal convictions pursuant to § 212(h).

8 According to Defendant, if and when the alien received a favorable determination on **(a)** and

9 **(b)**, the alien could depart the United States and then return, all while **(c)** and **(d)** remained

10 pending in the immigration court.

11       The application for advance consent to reapply is a mechanism for receiving early

12 determination of an I-212 waiver application permitted by 8 C.F.R. § 212.2(j), which states:

13 "An alien whose departure will execute an order of deportation [such as Defendant during

14 his deportation proceedings] shall receive conditional approval [of an I-212 waiver]

15 depending upon his or her satisfactory departure."  Defendant correctly explains that "[t]his

16 provision enables an alien interested in adjusting status abroad to know in advance of a

17 removal order whether he would have immediate consent to apply for adjustment of status

18 abroad if he agreed to the removal order."  (Defendant Br. at 22.)[7]  In other words, § 212.2(j)

19 allows an alien to receive an expedited decision on his I-212 waiver, but an alien proceeding

20 under that subsection must make the same showing as under any other part of § 212.2 in

21 order to receive permission to reapply.  If the alien submitted his application for an I-212

22 waiver request in conjunction with an application for adjustment of status that "has been

23 initiated, renewed, or is pending in a proceeding before an immigration judge, the district

24 director must refer the application to the immigration judge for adjudication."  8 C.F.R. §

25 212.2(e).

26 _____

27       [7]See I.N.S. General Counsel's Office Opinion No. 91-49, 1991 WL 1185160 (June 3, 1991) ("By regulation, the alien may seek this consent before leaving the United States to apply for an immigrant visa. 8 C.F.R. § 212.2(j). If the alien does not seek this consent prior

28 to departure, the alien may file an application for consent to apply for admission while abroad.").

1     "Advance parole," for purposes of immigration law, is the right of an unlawful resident

2   who has applied for adjustment of status to leave the United States without abandoning the

3   right to seek adjustment of status upon his return.  Samirah v. Holder, 627 F.3d 652, 658 (7th

4   Cir. 2010) (citing 8 C.F.R. § 212.5(f)).  "Revocation of advance parole terminates your 'liberty'

5   to be footloose abroad and requires you to rush back here to preserve your application."  Id.

6   The statutory provision authorizing the grant of advance parole is INA § 212(d)(5)(A), which

7   provides:

8           The Attorney General may . . . in his discretion parole into the United States
            temporarily under such conditions as he may prescribe *only on a case-by-case*
9           *basis for urgent humanitarian reasons or significant public benefit* any alien
            applying for admission to the United States, but such parole of such alien shall
10          not be regarded as an admission of the alien and when the purposes of such
            parole shall, in the opinion of the Attorney General, have been served the alien
11          shall forthwith return or be returned to the custody from which he was paroled
            and thereafter his case shall continue to be dealt with in the same manner as
12          that of any other applicant for admission to the United States.

13  8 U.S.C. § 1182(d)(5)(A) (emphasis added).  Advance parole is not granted as a matter of

14  course; rather, in addition to the showing required by statute, "[t]he Service policy is to grant

15  advance parole to an adjustment applicant only in situations where he is prima facie eligible

16  for adjustment and has equities in the United States which would probably lead to a favorable

17  exercise of discretion."  Massoud v. Attorney General of U.S., 459 F. Supp. 672, 677 (D.C.

18  Mo. 1978).

19      Defendant relies on the USCIS's Adjudicator's Field Manual for the proposition that

20  the limited circumstances under which an alien could apply "for both advance consent to

21  reapply for admission after deportation or removal and advance parole" include:

22          An alien in the U.S. who is an applicant for adjustment of status . . . before an
            immigration judge in removal proceedings . . . , and who wishes to resume his
23          or her application for adjustment upon return to this country after a journey
            abroad.
24

25  (Defendant Br. at 22 (citing Adjudicator's Field Manual § 43.1(h) (available at

26  www.uscis.gov)).)  The Field Adjudicator's Manual explains that "[s]uch alien's departure

27

28

1   (either with or without the advance parole) brings the bar under section 212(a)(9)(A)[8] into

2   effect."  (Id.)  Thus the advance approval of the I-212 waiver application is necessary before

3   the alien departs the country; otherwise, his departure pursuant to a grant of advance parole

4   would "render the alien ineligible for the adjustment of status."  (Id.)

5          According to Defendant, the IJ was on notice that the "third option for obtaining relief

6   from removal was best suited" for Defendant because:

7              (1) [Defendant] was complaining of medical needs that were not being
               addressed while in immigration custody and "for that reason" he opted to be
8              removed . . . ; (2) he was married to a United States citizen and had United
               States citizen children . . . ; and (3) he expressed an interest in pursuing an
9              adjustment of status application through the immigration judge . . . .

10  (Defendant Br. at 23.)  Thus, Defendant argues, the "removal order violated due process

11  because he was not 'made aware that he has a right to seek relief' so that he has 'a

12  meaningful opportunity to appeal the fact that he was not advised of that right."  For the

13  reasons set forth in the following part, the Court disagrees.

14

15          **3.      Impact of IJ's failure to disclose "third option"**

16

17          The Ninth Circuit has held that "where the record contains an inference that the

18  petitioner is eligible for relief from deportation, the IJ must advise the alien of this possibility

19  and give him the opportunity to develop the issue."  United States v. Arrieta, 224 F.3d 1076,

20  1079 (9th Cir. 2000).  Defendant claims that the removal order violated his due process rights

21  because he was not made aware of the "third option" for relief.  This argument fails for two

22  main reasons:  First, the IJ *did* perform his obligation to inform Defendant of available forms

23

24

_____

25          [8]See page 9, *supra*, explaining § 212(a)(9)(A) bar to admission for aliens who have
    been deported or removed.  The I-212 waiver is the permission of the Attorney General to
26  reapply for admission during the statutory period of exclusion provided by § 212(a)(9)(A).
    See also 8 C.F.R. 1245.2(a)(4)(ii)(A) ("The departure from the United States of an applicant
27  [for adjustment of status pursuant to § 245 of the INA] who is under exclusion, deportation,
    or removal proceedings shall be deemed an abandonment of the application constituting
28  grounds for termination of the proceeding by reason of the departure[, notwithstanding any
    grant of advance parole].").

11cr01750 BTM

1   of relief, and second, even if the IJ had been obligated to advise Defendant of the "third

2   option," the IJ's failure to do so caused no discernable prejudice.

3

4                   i.      IJ's obligation to advise Defendant of available forms of relief

5

6           The IJ *did* advise Defendant of his eligibility for available forms of relief, since the IJ

7   explained the "first option," and the "first option" is, for the purposes of this analysis, no

8   different than the "third option."  Under both the "first" and "third" options, the process for

9   seeking relief from the immigration court is the same:  The alien in deportation proceedings

10  seeks a continuance of the proceedings, obtains a visa, and applies to the immigration court

11  for an adjustment of status and a § 212(h) waiver of prior convictions.  Thus, under both

12  options, the "relief" that the IJ must discuss with the alien is the § 212(h) waiver (combined

13  with the adjustment of status), and nothing in the "third option" improves the alien's chances

14  of receiving a favorable determination.

15          The only difference between the "first" and "third" option is that under the "third," the

16  alien files additional paperwork (applications for advance permission to reapply and advance

17  parole) in an effort to temporarily leave the country while the adjustment of status and §

18  212(h) waiver applications are pending. This additional process is a mechanism for obtaining

19  permission to leave the country, *not* an independent form of relief from deportation.  The

20  Court is unaware of any authority, nor has Defendant cited any, suggesting that due process

21  requires an IJ not only advise an alien in deportation proceedings of all available forms of

22  relief, but also to advise him of all available procedural devices under the immigration

23  statutes--no matter how obscure--that could improve the alien's comfort during the pendency

24  of an application for an available form or relief.  Since the IJ advised Defendant of his

25  eligibility for relief under INA § 212(h), the Court finds no due process violation in the failure

26  to also advise Defendant of the ability to temporarily depart the country while his § 212(h)

27

28

                                                14

application was pending, assuming Defendant was eligible to depart.[9]  See United States v.
Lopez-Velasquez, 629 F.3d 894, 901 (9th Cir. 2010) ("[A]n IJ's duty is limited to informing an
alien of a reasonable possibility that the alien is eligible for relief at the time of the hearing.").

ii.     Prejudice

Defendant has failed to show prejudice for at least three reasons.  *First*, Defendant
cannot establish prejudice based on the failure to advise him regarding the "third option"
because he cannot show "'plausible grounds' for receiving such relief."  United States v.
Barajas-Alvarado, 655 F.3d 1077, 1089 (9th Cir. 2011).  The "plausible grounds" standard
"requires some evidentiary basis on which relief could have been granted, not merely a
showing that some form of immigration relief was theoretically possible."  United States v.
Reyes-Bonilla, 671 F.3d 1036, 1050 (9th Cir. 2012).  Where, as here, the relief at stake
requires a § 212(h) waiver, the alien must show that his deportation would cause "great
actual or prospective injury" or "*extreme* hardship" to his U.S.-citizen family member(s) that
goes "beyond the common results of deportation."  United States v. Arce-Hernandez, 163
F.3d 559, 564 (9th Cir. 1998) (emphasis in original) (citation and quotation marks omitted).
The evidence submitted by Defendant fails to meet this standard.

It is undisputed that Defendant spent a substantial part of the ten years leading up to
his 1998 deportation behind bars, and that Defendant did not provide significant economic
support to his family when he was outside prison.  Additionally, the Probation Officer's Report
submitted in connection with Defendant's § 459 conviction in 1994 indicates that Defendant
had been using heroin since at least 1990, that he was using on a daily basis at the time of
his 1994 arrest (Doc. 44-3, Exhibits to Gov't Br. at 37 of 52), that he had been living with his
mother (rather than his wife) at the time of his 1994 arrest (id. at 39 of 52), and that he
planned to reside with his mother upon release from custody (id.).

_____

[9]The parties have not briefed the issue of whether Defendant had a plausible claim
for advance permission to apply for reentry or for advance parole.  The Court does not reach
this issue.

Defendant states in his brief that despite his periods of incarceration, he maintained a strong relationship with his wife, Ms. Martinez (whom he met in 1978 and who appeared at the May 21, 2012 hearing on the present motion to dismiss) and his two children, Adrian and Alexis. (Defendant Br. at 25-26.) The strength of these relationships is buttressed by evidence submitted to the Court in support of Defendant's motion. This evidence includes affidavits from Defendant's wife and children, which speak to the important role played by Defendant, even while he was behind bars, in providing emotional support and guidance to the members of his family (Doc. 45, McMullen Decl., Exs. A(1)-A(3)), as well as a sampling of letters passed between Defendant and his family members during his incarceration (id. at Exs. A(5)-A(8)). Additionally, the declaration of Ms. Martinez explains that relocation to Mexico was not an option for the family, since she and the children were United States citizens who spoke very little Spanish. (Id. at Ex. A(1), p. 2.) Finally, Ms. Martinez's affidavit also states that during the periods when Defendant was not incarcerated, he provided the family with strong domestic support in the form of "child-care and household responsibilities." (Id. at p. 1.)

The Court does not doubt the veracity of these declarations, the closeness of this family, the fact that Defendant was a supportive father despite his legal troubles, or the fact that relocation was not a realistic option for Ms. Martinez, Adrian, and Alexis. However, the record, viewed in its entirety, does not reveal that Defendant's deportation could have caused the type of *extreme* hardship sufficient to establish a plausible claim to relief under § 212(h). Defendant did not provide essential economic support to his family, and the claim that he provided essential household support is mitigated by the facts that he spent a large part of the ten years leading up to his deportation in prison, that he had suffered from a heroin addiction for much of that period, and that he was living with his mother at the time of his 1994 arrest. Although he has established the emotional hardship of separation, Defendant has failed to provide "additional evidence of extreme hardship beyond the normal deprivation of family support." United States v. Muro-Inclan, 249 F.3d 1180, 1185 (9th Cir. 2001) (finding no plausible claim to § 212(h) relief where alien had "been incarcerated for 10 of the last 13

1  years); see also Arce-Hernandez, 163 F.3d at 563-64 (finding no plausible claim to § 212(h)

2  relief because allegation that wife was in poor health and would be unable to work in Mexico

3  "describe[d] the typical case of hardship that follows deportation"). Because Defendant "has

4  demonstrated only those hardships that inevitably result from the deportation of a non-citizen

5  who has acquired a citizen family[,]" he has failed to establish a plausible claim to relief under

6  § 212(h).[10]

7       *Second*, Defendant suffered no prejudice because his immediate deportation did not

8  hurt his chances of receiving lawful readmission into the United States. After his deportation,

9  Defendant could lawfully reenter the United States only upon the successful completion of

10  his application for an I-212 waiver, followed by successful completion of his applications for

11  adjustment of status and § 212(h) waivers of convictions. Under the "third option," however,

12  Defendant would have to receive a favorable disposition on the same three applications (in

13  addition to the application for advance parole), and in the same order. The only difference

14  is that under the third option, the I-212 waiver application is submitted to the IJ pursuant to

15  8 C.F.R. § 212.2(e) and (j), rather than to a consular office of the immigration service. Since

16  Defendant would have had to make the same exact showing to receive relief after

17  deportation as he would under the "third option," there was no prejudice in the IJ's failure to

18  disclose the "third option.

19

20

21       [10]Defendant relies on United States v. Arrieta, 224 F.3d 1076 (9th Cir. 2000). (See
Defendant Br. at 25-26). That case, however, is distinguishable. Arrieta entered the United

22  States with his mother at the age of nine in 1986. In 1996 he was sentenced to prison, and
in 1997 he was deported. He was arrested and charged with illegal reentry in 1998. 224

23  F.3d at 1078. The Ninth Circuit found extreme hardship to his U.S.-citizen mother and
younger siblings because during his teenage years, his mother was "medically unable" to

24  care for his siblings, and he was their primary care-giver. (Id. at 1082.) Additionally, the
record indicated that Arrieta provided "significant financial support to his family." (Id.) The

25  Arrieta court distinguished Arce-Hernandez, explaining that Arrieta had established
"something more" than the typical case of hardship. (Id.) In the present case, by

26  comparison, Defendant has introduced no evidence showing that he provided economic
support to his family, or that he provided essential emotional and non-economic support to

27  his children *where no one else was medically able to do so.* The fact that he remained close
to his family during his incarceration and provided emotional support through visits and

28  correspondence does not support the conclusion that his deportation caused "severe harm"
worse than in the ordinary case. (See id.)

11cr01750 BTM

1    *Third*, even if Defendant would have had a plausible claim for the "third option," and

2    even if it would have provided some identifiable advantage to his prospects for lawful

3    readmission into the United States, Defendant has failed to show he would have elected it

4    in the first instance.  The advantage of the "third option" is that the alien can receive a

5    determination on his I-212 waiver application before deciding whether to temporarily depart.

6    This knowledge is useful only if the alien is willing to abandon his plan to depart the United

7    States if he does not receive advance permission to reapply and advance parole.  Put

8    differently:   Unless the alien is prepared, in the event the IJ denies his I-212 waiver

9    application and/or the immigration service denies his application for advance parole, to

10   remain in the United States for *the entire pendency* of his adjustment of status and § 212(h)

11   waiver applications, then it is pointless for the alien to defer his departure for an uncertain

12   period of time while the IJ processes his I-212 waiver application and the INS processes his

13   application for advance parole.

14       At the time of his deportation proceedings in 1998, Defendant's primary motivation

15   was to depart immediately from the United States for the purpose of seeking medical

16   treatment.  In fact, Defendant chose immediate deportation despite the IJ's clear warning

17   (which Defendant acknowledged) that immediate deportation "could cause that you would

18   never be allowed to adjust your status because you would have a deportation or a removal

19   on your record . . . ."  (Transcript at 4.)

20       Thus, the Court finds it highly improbable that Defendant would have pursued the

21   "third option" if that option had been explained to him.  It is highly unlikely that Defendant

22   would have agreed to remain in custody in the United States for an uncertain period of time

23   while the IJ reviewed his application for advance permission to reapply and the immigration

24   service reviewed his application for advance parole.   Moreover, if those applications were

25   denied, it is highly unlikely that Defendant would have chosen to remain in the United States

26

27

28

18

1  for the entire pendency of his applications for adjustment of status and § 212(h) waivers.[11]

2  For the above reasons, the Court finds no prejudice in the failure to disclose the "third option"

3  to Defendant.

### III.  CONCLUSION

7       Since Defendant is unable to establish any due process violation in the underlying

8  deportation proceedings, nor is he able to show any prejudice resulting from the alleged due

9  process violations, the Court hereby DENIES his motion to dismiss the indictment.

11 **IT IS SO ORDERED.**

12 DATED:  June 22, 2012

13                                   _Barry Ted Moskowitz_
                                     BARRY TED MOSKOWITZ, Chief Judge
14                                   United States District Court

---

22       [11]The Court assigns little weight to contrary statements in Defendant's supporting
23 affidavit.  (See Doc. 49.)  Paragraphs 10 and 11 of the affidavit state:  "10.  I did not know
   that I could apply for an advanced determination of whether the waiver of the deportation
24 would be approved, and then be allowed to return to Mexico while an adjustment of status
   application was pending.  11.  If I would have been told about this option, I would have
25 pursued it.  Just as I told the immigration judge on February 24, 1998, I was interested in
   adjusting status, but I had medical needs that were not being addressed while I was
26 detained."  These statements indicate a misunderstanding of the "third option."  The "third
   option" does not guarantee that Defendant would have been "allowed to return to Mexico."
27 But even if Defendant understood that, the statements in an affidavit prepared for the
   purposes of the present litigation in 2012 are much less probative of Defendant's intentions
28 in 1998 than contemporaneous statements made to the IJ during Defendant's removal
   hearing.

11cr01750 BTM